MARIA ROMANI, Defendant in Error, *vs.* THE SHOAL CREEK COAL COMPANY, Plaintiff in Error.

*Opinion filed December 22, 1915—Rehearing denied Feb. 4, 1916.*

1. PRACTICE—*when motion in arrest for misnomer of plaintiff is properly overruled.* A motion in arrest of judgment for alleged misnomer of the plaintiff, based upon the fact that the plaintiff had married after the beginning of the suit and before the verdict, is properly overruled, as the marriage of the plaintiff does not change her identity nor affect the force of the judgment as a bar to a subsequent action by her under her new name.

2. MINES—*protection of Mines and Miners act is not limited to miners actually working or going to work.* The protection of the Mines and Miners act is not limited to a time when a miner is actually working or going to work, but extends to any miner rightfully in the mine and rightfully at the place of his injury as an incident of his employment in the mine and with the knowledge and consent of the mine manager.

3. SAME—*when miner is within protection of the Mines act.* A miner who has quit work in a mine for several days but who is obliged to go to the bottom of the mine to get his time check before he can get his earned wages, and who is given permission by the mine manager to go to a part of the mine to get his tools, with the assurance of the manager that there is no gas in the part of the mine where he is required to go, is within the protection of the Mines and Miners act, and the company is liable if his death is caused by its willful violation of the provisions of the act.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY V. FREEMAN, Judge, presiding.

W. B. McBRIDE, (MASTIN & SHERLOCK, of counsel,) for plaintiff in error.

CHARLES CHENEY HYDE, CHARLES B. ELDER, IRA EDWARD WESTBROOK, and CHARLES H. WATSON, for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Raphael Romani was killed by an explosion in defendant's mine in Montgomery county on November 11, 1910. The plaintiff, his widow, recovered a judgment for $5500 against the defendant in the superior court of Cook county, which judgment, on appeal, was affirmed by the Appellate Court for the First District and the case is brought to this court for review by writ of *certiorari.*

The recovery for the loss of life of deceased was based on the provisions of the Mines and Miners act in force at the time of the accident. The original declaration, consisting of two counts, was filed December 21, 1910, to which defendant filed the general issue. Nine additional counts were filed December 5, 1912, and a demurrer to the same was overruled. January 6, 1913, defendant filed a plea of the Statute of Limitations to the additional counts. A demurrer to such plea was sustained to all save the plea to the third additional count. Plaintiff withdrew the two original counts and the seventh additional count, and the defendant filing the general issue, the cause was submitted to the jury on the first, second, fourth, fifth, sixth, eighth and ninth additional counts. Defendant insists that the two original counts failed to state a cause of action, and that

since the additional counts were filed more than one year after the cause of action accrued, the demurrer to the plea of the Statute of Limitations should not have been sustained. The plaintiff insists (1) that the amended or additional counts did not state a new or different cause of action; (2) that defendant cannot question the correctness of the ruling sustaining the demurrer to the plea of the Statute of Limitations, for the reason that when the demurrer was sustained defendant did not elect to stand by its plea but filed a plea of the general issue, upon which the cause went to trial.

The original declaration sought to fix defendant's liability and recover damages under the provisions of sections 18 and 33 of the Mines and Miners act of 1899, as amended in 1907, (Laws of 1907, pp. 392-397,) in force at the time of the accident. The first count of the original declaration alleged defendant was operating a coal mine and that deceased was employed in the underground workings of said mine as a miner; that it was the duty of defendant to comply with the provisions of the statutes of Illinois in relation to coal mines providing for the health and safety of persons employed therein, and not to willfully neglect, refuse or fail to do the things required to be done by the statutes; that it was the duty of defendant not to allow men working in said mine to remain where gas was being carried into the ventilating current, nor to allow men to enter said mine to work therein, except under the direction of the mine manager, until all conditions had been made safe. The count further averred that defendant permitted a dangerous condition to exist in a portion of said mine, in that gas was permitted to generate and accumulate in the ventilating current in a portion of said mine, and that while said condition was permitted to exist defendant willfully violated the statute by allowing deceased to enter the mine where said dangerous condition existed and not under the direction of the mine manager, by reason of which the gas

was ignited, causing an explosion, which resulted in the death of decedent. The second count of the original declaration alleged defendant had failed to comply with the provisions of the statute requiring that a mine examiner visit the mine each day before the men were permitted to enter, and inspect all places where men are expected to pass or work, observe the conditions of the mine as to whether recent falls had occurred or gas accumulated, and, as evidence of his examination, to mark falls and place a conspicuous mark where gas was discovered and at once report his findings to the mine manager, and charged that by virtue of defendant's failure to have the examiner visit the mine on the morning of the day of the injury and his failure to properly mark the dangerous places, deceased, in the performance of his duty and by defendant's direction, entered a part of the mine which was unsafe because of an accumulation of gas, and that such gas becoming ignited, exploded, causing decedent's death. The first and second additional counts were substantially similar to the two original counts, and based plaintiff's right of recovery upon defendant's failure to comply with the statutory provisions before referred to. The fourth additional count based defendant's liability upon its failure to have its mine examiner visit and examine that portion of the mine where men were expected to work or pass, and that decedent, though not then in defendant's employ, was permitted, with defendant's knowledge and consent, to enter the mine for the purpose of removing his tools, and that he so entered that portion where the explosion occurred, causing his death. The fifth count charged defendant with the willful failure to place a conspicuous mark in a certain working place where accumulations of gas and other unsafe conditions had been discovered, whereby deceased, while in the employ of defendant, was killed. The sixth count charged the decedent, while not in the employ of defendant but with its knowledge and consent, was permitted to enter the mine for the

purpose of removing his tools and was killed because of the failure of the mine examiner to make a proper inspection. The eighth and ninth counts charged defendant with the willful failure to place a conspicuous mark where an accumulation of gas had been discovered, and that decedent, while in defendant's employ and in anticipation of performing other work in defendant's mine, had left his tools there with the knowledge and consent of defendant and was permitted by defendant to descend into said mine and enter said mine to remove his tools with its knowledge and consent, and that the gas ignited, causing decedent's death. The original counts stated a cause of action, and the additional or amended counts did not state a new cause of action.

Defendant filed a motion in arrest of judgment because of the misnomer of the plaintiff, which was overruled and upon which ruling error is assigned. The suit was properly brought in the name of Maria Romani. The evidence showed that before verdict she by marriage became Maria Almerigi, but her identity remained unchanged, as shown by the continued use of the name Maria Romani. The judgment recovered could be pleaded in bar of any subsequent action brought in the name of Maria Almerigi. The action of the court in overruling the motion in arrest of judgment was not error.

On the trial of the case the evidence in many instances was contradictory. Decedent had been in the employment of defendant and had quit work November 3, 1910, because of a cave-in or squeeze occurring in a main entry, between the place where decedent worked and the shaft. The testimony showed he went into the mine on the day of the accident, November 11, 1910, for the purpose of seeing the mine manager and getting his time check, and for the further purpose of getting his tools, which had been left where he quit work November 3, 1910. There was testimony decedent secured his time check from the mine mana-

ger, who told him he could go get his tools and who told him there was no gas in that part of the mine through which he must pass. Decedent proceeded to get his tools, carrying a lighted lamp, which ignited a formation of gas, which exploded, causing his death. It appears from the examiner's reports that gas had been discovered November 2, 3, 4 and 5 at the place where the explosion occurred, with a notation on the report of the last named date that the place was unsafe. It is admitted no examination of the place where the accident occurred had been made subsequent to November 5. Two witnesses testified no danger signs had been placed indicating the existence of the dangerous conditions, and the State mine examiner, who visited the mine the afternoon following the explosion, testified he saw no indication of a danger mark. The mine examiner testified to having placed a sign, "Danger—Gas," in the middle of the roadway leading to the place where the accident occurred, and the mine manager testified to having seen the same.

The principal ground urged for the reversal of this judgment is the refusal of the court to direct a verdict for defendant on the ground that the place of the injury was not a place where men were expected to work or pass, and because it is claimed decedent at the time of the accident was not engaged in his work and hence was not under the provisions of the act under which this suit was brought. Defendant's position, in substance, is that the decedent at the time of the accident was a trespasser on defendant's premises and that defendant owed him no duty except not to willfully and wantonly injure him. Admitting deceased was not in the employ of defendant at the time of the accident, he had not received his pay on that day and was still carried on the books of the defendant company. To get his pay he had to go to the mine manager, at the bottom of the mine. Plaintiff introduced testimony that the mine manager knew of and consented to decedent's going

to the place of the accident and that there was no danger
sign to warn him of the danger. Under such proof, did
defendant owe decedent the statutory duties? Since it is
admitted no record of the condition of the mine at the
place where the accident occurred was made after November 5, 1910, and recorded in a book kept for that purpose
for the information of the company, the inspector and all
other persons interested, paragraph (*c*) of section 18 of the
Mines and Miners act of 1907 was clearly violated if the
place of the accident was a place where men were required
to work or pass. This paragraph provided the record of
the condition of the mine "shall be made each morning before the miners are permitted to descend into the mine."
Decedent was a miner by trade, and but eight days previous to his death was employed by defendant and was still
on its pay-roll. It was necessary for him to see the mine
manager at the bottom of the mine and get his time check
before he could get his pay for the work he had done. He
was also privileged to get his tools, which he had left there
on the day he was laid off. There was evidence he inquired
of the mine manager if he might get his tools and if the
passage was safe. There was further evidence that no sign
or conspicuous mark existed to warn him of the danger existing where it was necessary for him to go to get his tools.
While upon these propositions the testimony was conflicting, there was abundant evidence on the part of plaintiff
to sustain her contention if believed. In *Henrietta Coal
Co.* v. *Martin,* 221 Ill. 460, the court, in construing the
Miners act, said its purposes are "to protect, so far as legislative enactment may, the health and persons of men
employed in the mines of the State while they are in the
mines." In *Brunnworth* v. *Kerens-Donnewald Coal Co.* 260
Ill. 202, a miner was killed by the defendant company because of its failure to comply with one of the provisions
of the Mines and Miners act, while he was attempting to
ascend the shaft of the mine to get his cap and lamp, left

at the top of the shaft. Defendant sought to avoid liability, alleging the accident occurred before deceased had gone to work and insisting he was a trespasser on defendant's premises, to whom defendant owed no duty except not to willfully injure him. The court, in dealing with this contention, said: "At the time of his injury he was a member of that class of persons for whose health and safety the Mining act was passed. He was an employee of the plaintiff in error at the time he lost his life. The mere fact that he descended the shaft before he was required to do so did not render him a trespasser or deprive him of the protection of the statute." We think in the instant case decedent was of that class of persons which the Miners act seeks to protect, and in any event he was not a trespasser. He was in the mine for the purpose of getting wages due him for work done, and, as the proof tends to show, with the manager's consent went to get his tools. The defendant owed him the duties provided by the statute, and its failure to comply with the provisions of the same makes it liable in damages for his death. We do not think the statute, by any reasonable construction, limits the protection afforded a miner to the time when he is actually working or going to work. A miner rightfully in the mine and rightfully at the place where he is hurt as an incident of his employment in the mine, and with the knowledge and consent of the mine manager, is equally under the protection of the provisions of the act. Defendant's motion to direct a verdict in its favor was properly refused.

The decedent coming within the provisions of the act, where there is evidence, as there was in this case, that defendant's wrongful act caused the injury, either as a sole cause or as a concurring cause, then the question of proximate cause is for the jury. (*Pullman Palace Car Co. v. Laack*, 143 Ill. 242; *Waschow v. Kelly Coal Co.* 245 id. 516.) Whether the death of plaintiff's intestate resulted from the willful failure of defendant to comply with the

requirements of the statute, as alleged, and whether decedent was rightfully at the place where the injury occurred, was properly submitted for determination by the jury, and while the testimony is conflicting, there was evidence upon which the jury might very properly find for the plaintiff on those issues.

Error is assigned on the admission and rejection of testimony and the giving and refusing of instructions. We have examined the objections pointed out and find no reversible error and do not deem it necessary to set out and discuss the objections at length.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*