[Civil No. 2523.   Filed May 3, 1927.]

[255 Pac. 996.]

CONNOR LIVESTOCK COMPANY, a Corporation, C. E. CONNOR and FRED C. JOHNSON, Appellants, v. ARTHUR A. FISHER, Appellee.

Mr. J. E. Morrison and Mr. O. C. Ludwig, for Appellants.

Mr. T. A. Carson and Mr. E. J. Flanigan, for Appellee.

LOCKWOOD, J.—Arthur A. Fisher, hereinafter called plaintiff, on January 13th, 1925, brought suit against Connor Livestock Company, a corporation,

hereinafter called defendant. The original complaint, in addition to the necessary formal matters, alleged:

"That the defendant is indebted to the plaintiff in the sum of two thousand one hundred fifty-four dollars and fifty cents ($2,154.50) as a balance due on account for rent of barns and corrals at 724 South First avenue, Phoenix, Arizona, from the defendant to the plaintiff, as shown by the itemized account hereto attached, and made a part of, and marked Exhibit A, and that said sum is just, reasonable, and correct, and which the defendant has agreed to pay.

"That said defendant rented said barns and corrals from the plaintiff as heretofore stated for the purpose of feeding its mules and horses, and storing its wagons, and that said plaintiff has heretofore demanded payment of said sum, and that said defendant has neglected, failed, and refused to pay same, and said sum is now due and owing from the defendant to the plaintiff."

Attached to this complaint was the following exhibit:

### Debits.

| | | |
|---|---|---|
| To rent on central corral, 324 S. 1st Ave., Phoenix, Arizona, from May 23, 1919, to December 23, 1924, at $16 per month... | $1,072 | 00 |
| To rent on north corral from February 1, 1920, to January 1, 1925, at $20 per month | 1,180 | 00 |
| Balance due on previous account, February 20, 1924 ...................... | 232 | 50 |
| Cash advanced. ...................... | 7 | 00 |
| Rent on south corral from September 5, 1921, to February 5, 1922, five months, at $15 per month ...................... | 75 | 00 |
| Total ...................... | $2,566 | 50 |

### Credits.

| | | |
|---|---|---|
| By cash during the years 1921 and 1922 ......................$392 00 | | |
| Credit during 1920 .............. 20 00 | | |
| Total ......................$412 00 | 412 | 00 |
| Balance ...................... | $2,154 | 50 |

Defendant demurred to the complaint in so far as the items shown by the exhibit to have accrued more than three years before the commencement of the action were concerned, on the ground that such items were barred by the statute of limitations, and then set up the same defense by way of answer. It then filed a defense on the merits, claiming it was entitled to more credits than had been given it by plaintiff, admitted an indebtedness not to exceed the sum of $435.50, and counterclaimed for certain lumber, troughs and a gate of the value of $227.50, which it claimed to have furnished plaintiff, and in addition set up a cross-complaint for the sum of $1,500. Plaintiff moved to strike the cross-complaint, which motion was by the court granted, and answered, denying the allegations of defendant's counterclaim.

An amended complaint was then filed, differing materially from the original only by alleging the account included work and labor performed by plaintiff and cash advanced by him, as well as rent. To this defendant filed a demurrer, answer and counterclaim substantially like its first one. The demurrer to the complaint was overruled and the case went to trial before the court. Testimony on behalf of both plaintiff and defendant was offered and admitted, defendant consistently and insistently throughout the trial objecting to any evidence in regard to the items of charge due more than three years prior to the filing of the action. Thereafter the court rendered judgment in favor of plaintiff for the sum of $2,050.50. After the usual motion for new trial was made and overruled, defendant appealed to this court.

There are some ten assignments of error, which we will consider according to the legal propositions presented. The first five raise the question as to whether or not certain parts of plaintiff's alleged cause of action were barred by the statute of limi-

tations. It is admitted by both plaintiff and defendant that this particular issue of the case turns upon whether or not this is an action upon an "open account," within the meaning of section 711, subdivision 2, chapter 2, title 6, Revised Statutes of Arizona of 1913, Civil Code, as amended by chapter 76, Session Laws of 1917, which reads in part as follows:

"There shall be commenced and prosecuted within three years after the cause of action shall have accrued, and not afterward, all actions or suits in courts of the following description:

\* \* \* \* \* \* \* \* \* \* \*

"(2) Actions upon stated or open accounts other than such mutual and current accounts as concern the trade of merchandise between merchant and merchant, their factors or agents: Provided, that no item of any stated or open account shall be barred under the provisions hereof, so long as any item thereof shall have been incurred within three years immediately prior to the commencement of any suit thereon."

If this is an action upon an open account, the statute of limitations had not run, for the last charges made by plaintiff against defendant were as of December 23d, 1924, while the suit was filed January 13th, 1925. If, on the other hand, it is not an "open account," it falls under subdivision (1) of section 711, *supra,* which reads as follows:

"(1) Actions for debt where the indebtedness is not evidenced by a contract in writing."

And all items due before January 13th, 1922, would be barred by the statute.

The term "open account" has often been defined, but as was said in *Maury* v. *Mason,* 8 Port. (Ala.) 211–230:

"It will . . . be found easier to determine the cases which are not such, than to define with accuracy . . . all those accounts which may be classed as such."

Generally speaking, an open account is one where there are running or concurrent dealings between the parties, which are kept unclosed with the expectation of further transactions. *Purvis* v. *Kroner,* 18 Or. 414, 23 Pac. 260; *Norton* v. *Larco,* 30 Cal. 126, 89 Am. Dec. 70. However, not all accounts which are not stated or reduced to writing are necessarily "open accounts." An express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not, as a rule, an open account. *Smith* v. *Ellington,* 14 Ga. 379; *McCamant* v. *Batsell,* 59 Tex. 363; *Maury* v. *Mason, supra.*

Let us analyze plaintiff's claim, as shown by the exhibit attached to the complaint. It consists of three classes of charges: (a) A balance from the previous alleged account: (b) a charge for a cash advance of $7; and (c) rent due on an oral lease for each of three different premises. The credits allowed by plaintiff on this account are without exception cash paid and cover a period of some five years.

Were the only basis of plaintiff's action the rent due on the three oral leases, we do not think it could be successfully contended that it constituted an "open account." The amount of rent due and the time of payment under the leases was fixed, and the fact that the tenant was at times behind in his rent, or that the leases might be terminated at any time on notice, do not, we think, affect the character of the contracts. We have been cited to no authority holding a contract of this nature creates an open account. Appellee refers to two Vermont cases, but in that state there is a special statute allowing an action of what is called "book account," and the Vermont cases cited by appellee hold that the ordinary action to recover rent for the use and occupation of premises is *not* one of account, but rather of *assumpsit* or debt, but

that under some particular circumstances rent may be recovered in the statutory action.

It will be urged by plaintiff, however, that the other two classes of items bring the whole matter within the definition of an open account. It may be that there are circumstances under which an item not ordinarily included in an open account may be placed there in the ordinary course of business, but we think this case is not one of that nature. It savors to us rather of an attempt to avoid the statute of limitations by, as an afterthought, arbitrarily including matters not properly or originally considered by either party as an open account, under that head, in order to avoid the statute. We do not think the items of rent constitute either an open account or any part thereof, and the plea of the statute of limitations was therefore available to defendant as against all such items due and payable before January 15th, 1922. The other items of cash advanced and the balance due from a previous account are clearly within the statute, as they were all incurred long prior to 1922 and could only be saved by considering them as items of a general open account whose last item was not barred by the statute. This objection was not available to defendant on demurrer, as the court rightly held the exhibit attached to the complaint was not a part thereof for the purpose of demurrer. 31 Cyc. 323; *State* v. *Superior Court,* 14 Ariz. 126, 125 Pac. 707; *McPherson* v. *Hattich,* 10 Ariz. 104, 85 Pac. 731. The issue, though, was raised by defendant in his answer, and the court should have sustained the plea of the statute to all items due previous to 1922, unless defendant waived that defense.

We have previously held that the plea of limitations may be waived by the party entitled to rely thereon, by his testifying that he does not claim the benefit of the statute, even though such plea is expressly set forth in his answer. *Ainsworth* v. *Lip-*

*sohn,* 22 Ariz. 291, 196 Pac. 1028. It has also been held that the interposition of an inconsistent defense is equivalent to a waiver. *Merrill* v. *Merrill,* 215 Ill. App. 602; *Romani* v. *Shoal Creek Coal Co.,* 191 Ill. App. 521; Id., 271 Ill. 360, 111 N. E. 88; *Kimberly-Clark Co.* v. *Patten Paper Co.,* 153 Wis. 69, 140 N. W. 1066. Among these inconsistent defenses is the filing of a plea of set-off, which is not limited to the time within the statutory period before the institution of the suit. *Merrill* v. *Merrill, supra.*

It is true that the Supreme Court of Illinois bases its decision upon the construction of certain provisions of its Practice Act. We think, however, that the same conclusion should be reached in the absence of a statute as a matter of equity and common sense. It would be unjust indeed to permit defendant to claim the benefit of the statute of limitations against plaintiff's suit, while presenting items arising out of the same transactions and barred by the same statute as a matter of set-off. It cannot blow both hot and cold with the same breath. It appears that defendant both alleged and proved as a matter of set-off items of alleged indebtedness by plaintiff to it accruing before January 15th, 1922. We are of the opinion that such pleading and proof was, as a matter of law, a waiver of the bar of the statute of limitations, notwithstanding the fact that it had been set up in the answer.

The next assignment of error is in substance that the court should not have rendered a judgment against the sureties on the replevin bond given by defendant to release an attachment levied in support of the action, for the reason that plaintiff's affidavit for attachment set up a different cause of action from that proved by him, and upon which the judgment was rendered, and further that the attachment and replevin bond were not introduced in evidence. So far as the second point is concerned, we do not

think it was necessary to offer any of these papers in evidence. As was said in the case of *Johnson v. Goolsby Lumber Co.* (Tex. Civ. App.), 121 S. W. 883:

"These papers were filed papers, and constituted a part of the record before the court in the case, of which the court would take judicial cognizance, and no formal introduction of them in evidence was necessary."

And paragraph 1424, Revised Statutes of Arizona of 1913, Civil Code, expressly directs judgment should in cases like this be entered against the sureties on the bond.

Nor is there merit in the other objection to the judgment. The replevin bond discharging the attachment was conditioned that, if defendant "be condemned in said action, and if it satisfies the judgment which may be rendered in said action, then and in that event this obligation shall be and become null, void, and of no effect; otherwise, to be and remain in full force and virtue." The bond upon its face was an unconditional promise to pay any judgment that might be rendered against defendant on the merits of the case. The consideration for that promise was the immediate release of the property attached, and the giving of the bond effected such release. Under such circumstances the defendant is estopped from raising any question as to the regularity of the attachment. *Brady* v. *Onffroy,* 37 Wash. 482, 79 Pac. 1004.

If we understand the seventh assignment of error, it is to the effect that a party litigant should be permitted to defer a request for written findings of fact and conclusions of law until after he ascertains whether the judgment will be against or for him. Apparently defendant's theory is that, if the judgment be in his favor, he should be permitted to have it come up to this court on appeal without findings

of fact, so that the well-known presumption of law in favor of a judgment rendered without such findings may be urged by him in support thereof, while, if he discovers that it is he, instead of plaintiff, who must appeal, he should then be allowed to insist on findings, so that the plaintiff may not take advantage of the same rule. We do not find this argument sufficiently persuasive to cause us to reverse the rule laid down in *Deatsch* v. *Fairfield*, 27 Ariz. 387, 38 A. L. R. 651, 233 Pac. 887.

What we have already said disposes of the fifth and eighth assignments of error. So far as the ninth is concerned, we think it is governed by the case of *United States Fidelity & Guaranty Co.* v. *California-Arizona Construction Co.*, 21 Ariz. 172, 186 Pac. 502. The remarks of the trial judge in regard to a man refusing to pay a debt which he admitted he owed, because it was barred by the statute of limitations, do not indicate such a state of mind on his part as would affect his impartiality, in view of the evidence in the case and the law as we have declared it.

For the foregoing reasons, the judgment of the superior court of Maricopa county is affirmed.

ROSS, C. J., and McALISTER, J., concur.