BOYLES GALVANIZING & PLATING COMPANY, an Oklahoma Corporation, Appellant,

v.

HARTFORD ACCIDENT & INDEMNITY COMPANY, a Foreign Corporation, Appellee.

HARTFORD ACCIDENT & INDEMNITY COMPANY, a Foreign Corporation, Appellant,

v.

BOYLES GALVANIZING & PLATING COMPANY, an Oklahoma Corporation, Appellee.

Nos. 8410, 8411.

United States Court of Appeals
Tenth Circuit.

Feb. 3, 1967.

William K. Powers, Tulsa, Okl. (Dyer, Powers, Gotcher, Marsh & Kamins, Tulsa, Okl., of counsel; Gerald E. Kamins, Tulsa, Okl., with him on the brief), for Boyles Galvanizing & Plating Co.

David M. Thornton, Tulsa, Okl. (Andrew T. Dalton, Jr., Tulsa, Okl., with him on the brief), for Hartford Accident & Indemnity Co.

Before BREITENSTEIN and SETH, Circuit Judges, and KERR, District Judge.

SETH, Circuit Judge.

Boyles Galvanizing & Plating Company (Boyles) obtained a judgment against Hartford Accident & Indemnity Company (Hartford) in an action on a surety bond tried to the court without a jury. Both parties have appealed. The principal issues on appeal concern a default judgment entered against Hartford's principal, Indiana Steel Tank Corporation (Indiana Steel), whether Hart-ford as a surety was released by lack of notice of its principal's default, and the proper amount of the judgment.

The record shows that Indiana Steel had contracts to erect steel towers for the Federal Aviation Agency. The steel used had to be galvanized and Boyles undertook to do this work. Some of the steel parts were shipped to the Boyles plant in Tulsa, Oklahoma, and were galvanized; however, a disagreement arose between Indiana Steel and Boyles over payment for the work and the handling of the finished parts. Boyles stopped work, and Indiana Steel in October 1963 filed suit against Boyles for damages in the United States District Court for the Northern District of Oklahoma (Cause No. 5813). The complaint also asked for an injunction to cause Boyles to release possession of some of the finished items. The parties to the action did not proceed to trial but instead signed a stipulation which set out a payment schedule to be followed by Indiana, provided for the handling of the finished steel parts, and stated other details. The most important portion of the stipulation to this action was a' provision whereby Indiana agreed to furnish an "indemnity bond" which would " * * * guarantee payment for galvanizing, packaging and shipment on * * * " both Federal Aviation contracts. It also stated that such "indemnity and guaranty bond" be acceptable to Boyles and be deposited with the clerk of the court. The stipulation also provided that the case could be reopened on motion of either party. The court approved the stipulation by an order, and the bond or bonds here in issue were provided by Hartford as the surety.

The record shows that Indiana did not make the payments as provided in the above stipulation and did not otherwise proceed. Boyles then reopened the suit in which the stipulation was filed (No. 5813) by filing an answer and a cross-complaint on February 10, 1964. These pleadings sought judgment against Indiana in the amount provided in the stipulation and the original agreement without

adjustments. This was computed by Boyles to be the sum of $39,326.14. Hartford was not made a party to the action, but a witness for Boyles testified that Hartford's claim office at Tulsa was advised of Indiana's failure to pay and of the reopening of the suit. Hartford's witness testified that the company had no record of this advice. Thereafter there was correspondence between Boyles and Indiana with advice to Hartford. Hartford's attorney sought an extension of time, advised Boyles' attorney that it would employ local counsel and have an answer filed. The pleading was not filed, no extension of time for Indiana to answer the counterclaim could be secured, and a default judgment was entered on March 27, 1964, *by the clerk of the court* in the absence of the judge. Motion was filed by Boyles for judgment on Hartford's bond. A conference was held by the trial judge who suggested that Hartford file a motion to vacate the default judgment, but Hartford did not do so.

Apparently no further proceedings were had in the original case (No. 5813), and Boyles thereafter commenced the suit with which we are here concerned (No. 6060) against Hartford on its bond. Boyles sought a summary judgment against Hartford, but it was denied. The case was then tried to the court, and judgment was rendered against Hartford for $28,601.00. No attorney's fees were allowed.

During the course of the trial the invoices, shipment records, schedules, material on hand, records of payment, and other data relative to the performance by Boyles and by Indiana were introduced, and witnesses heard. The stipulation in No. 5813 was introduced together with the bond or bonds filed pursuant to it. The record shows that when Indiana and Boyles stopped work there remained at the Boyles plant a considerable quantity of steel parts.

The court found that the contract referred to in the bond was the stipulation entered in Cause No. 5813, and that the performance which the surety guaranteed was payment by Indiana for the galvanizing by Boyles. The court further found that Indiana had defaulted in failing to make the stipulated payments. It also found that the default judgment taken by Boyles against Indiana should have been signed by the court after notice, rather than by the clerk. The court found that Boyles had presented an accounting, and Hartford was liable in the amount of $28,601.00.

The court concluded that the default judgment in No. 5813 signed by the clerk was "voidable only," and was " * * * prima facie evidence against Hartford Accident & Indemnity Company, who may show all matters which might have been asserted by the principal on the bond." The court then concluded that this was an action on a contract, not on an open account, and refused to allow attorney's fees to the plaintiff Boyles.

■ On these appeals Boyles urges that the trial court should have granted it a summary judgment, and should not have "gone behind" the default judgment in No. 5813. These points need not be considered because the denial of the motion for summary judgment is not appealable and the issues "behind" the default judgment were litigated in the trial court in this action.

Boyles also urges that the judgment should have been for $39,326.14, the amount of the default judgment, rather than $28,601.00 as rendered; and further, that it should have been allowed attorney's fees.

■ The trial court found, as described above, that Indiana failed to make the payments agreed to by it, and required of it by the stipulation in No. 5813. This finding is supported by the record even though the default judgment in No. 5813 be disregarded entirely, as proof of shipments and other transactions was submitted also in detail. The stipulation was introduced together with invoices, schedules, and other evidence showing the amount of galvanizing done by Boyles, and what payments were made. There was testimony that there was steel

still on hand in Boyles' yard, but the ownership of it was not decided.

█ The trial court also found, and the record supports its finding, that Hartford had executed the bond upon which the action was based, that the contract referred to in the bond was the stipulation, and the performance guaranteed by the surety was payment by Indiana. Hartford was given an opportunity to present defenses available to Indiana, and it did so. The issues relating to Boyles' performance were fully litigated.

The record shows that the bond sued upon was intended by all concerned to be a payment bond.[1] The testimony shows that apparently a wrong company form was used, and Hartford at one time asked to withdraw the bond and make a change, but then it decided not to do so. This double obligation or double bond has led to the variance in the positions taken by the parties as to the nature of the bond. The stipulation and the court order both refer to the obligation, and the bond to be furnished, to be a payment bond. This was the obligation of Indiana sought to be enforced in the litigation, and the action was continued upon the furnishing of the bond. The testimony of the agent of Hartford was to the effect that the payment obligation of the bond was the significant one, and that they had guaranteed payment. Thus the bond was intended to secure the payments to be made by Indiana to Boyles.

Hartford argues that a notice of Indiana's default should have been given to it promptly, but it was not given, and prejudice to it resulted. This prejudice, and its release as surety, Hartford urges, came about because Indiana after default received payments on its contract with FAA in amounts more than the bond

penalty, and thereafter, and again before notice, became insolvent.

The record shows that Boyles received the last payment from Indiana on December 31, 1963, after some urging. It also shows that in February 1964 Indiana abandoned the jobs, and on February 10, 1964, the suit No. 5813 was reopened by the filing of pleadings by Boyles. Hartford's local claim agent was advised that the suit was so reopened. The record shows that Indiana's attorney on February 26th requested an extension of time to answer, and a copy of his request went to Hartford. Thereafter Hartford was advised of the proceedings, joined in a request for further extensions, and advised the parties that it would have local counsel, all as above described.

Thus the last payment was at the end of December, and according to the trial court's finding, Hartford knew shortly after February 10th that the action in which its bond was filed was reopened. The reopening of the suit was the manner in which the original parties contemplated that a breach of the stipulation would be brought to the attention of the court. The trial court used the due date, December 7th, of the last installment paid as the date of default, but it makes no difference which date is used.

█ The trial court made no specific finding as to what particular notice of default was required, and if required whether it was timely given. It enforced the bond so it must be concluded that all conditions precedent were met. The law and the record support this conclusion. The Oklahoma statutes make particular reference to guarantors of payment in 15 Okl.St.Ann. § 332 where it is provided that: "A guarantor of payment or performance is liable to the guarantee immediately upon the default of

1. The record shows that two bonds were issued each referring to the other and reciting that they were issued simultaneously. One bond is a typical performance bond which recites that Indiana had entered into a contract with Boyles " * * for guaranteeing payment for galvanizing * * *", and the condition is the

performance of such contract. The other bond recites the agreement for guaranteeing payment for galvanizing, and the condition is that Indiana " * * * shall promptly make payment to all claimants * * * for labor and material * * *", thus a typical labor and material bond.

the principal, and without demand or notice." A similar provision dispensing with notice is contained in § 333 pertaining to conditional obligations of guarantors, unless they are unable by reasonable diligence " * * * to acquire information of such default * *." 15 Okl.St.Ann. § 342 also excuses mere delay by the creditor in proceeding against the principal.

■ The record shows that after default by Indiana to Boyles, substantial payments were made by FAA to Indiana on its contracts, but these payment vouchers also show that the payments were theretofore assigned to the Gary National Bank by Indiana. Indiana did become insolvent, and Hartford urges here, as mentioned above, that during this interval it had effective remedies against Indiana. The record however does not support its argument. There is no showing of prejudice resulting from the delay, 15 Okl.St.Ann. § 377(2), assuming the advice of default was delayed and was required. The last cited section of the Oklahoma statutes provides that a surety is exonerated as would be a guarantor. It also provides exoneration to the " * * * extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; * * *." As stated Hartford shows only that payments were made to Indiana, and that these were already assiged to a bank. This is not sufficient as the conclusions of the trial court indicate. The trial court did not find that the delay, nor what occurred in the interval, was such as to release the surety, and we cannot say that it was in error. Thus the surety was not released.

■ As to the issue of attorney's fees claimed by Boyles, the description of the nature of the claim hereinabove shows that it was not on an open account. Whitson v. Wetherbee Electric Co., 416 P.2d 888 (Okl.). The trial court concluded that the action was on a contract and not on an open account, and thus did not come within 12 Okl.St.Ann. § 936. Boyles also asserts the action, by the terms of the bond, was to enforce a lien under 42 Okl.St.Ann. § 176. The action before us is, of course, not such an action, and Boyles' claim that the bond was authority for attorney's fees is not sustainable in the absence of an express provision for such "costs." The trial court's determination of this issue was therefore correct.

■ The trial court made no findings of fact to support its conclusion as to the amount of damages recoverable, and the case must be remanded for this reason. The amount claimed by Boyles was reduced by about $15,120.00, and it may be speculated that this represents the amount of steel left on hand in the Boyles plant times the unit price for overshipments if caused by Boyles. However there are no findings that there were overshipments or that Boyles caused duplicate shipments of steel to it by Indiana which would possibly cause a reduction in the amount of money to which Boyles was entitled. The court also made no findings, and reached no conclusion, as to the ownership of the steel remaining at the Boyles plant, and this must also be decided.

Both parties took an appeal from the judgment of the trial court. The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.